IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CAROLYN M. KIEFFABER et al.,** ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | |
| v.  ) | No. 20-1177-KHV |
| ) | |
| **ETHICON, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ORDER DIRECTING JURY TRIAL BY VIDEOCONFERENCE**

Plaintiff filed this products liability case on August 26, 2012, seeking to recover damages from Ethicon, Inc., and Johnson & Johnson for injuries which she sustained on account of Prolift Anterior implant surgery to treat pelvic organ prolapse with defendants' device on July 11, 2007. On December 4, 2012, by order of the Judicial Panel on Multidistrict Litigation, the case was transferred to the United States District Court for the District of West Virginia for consolidated proceedings before the Honorable Joseph R. Goodwin. Eight years later, on June 26, 2020, Judge Goodwin remanded the case to this Court, ready for trial. On July 28, 2020, Chief Judge Julie A. Robinson, to whom the case was originally assigned, scheduled it for jury trial commencing April 20, 2021 in Kansas City, Kansas. She later recused. The undersigned judge was then assigned for further proceedings, and the trial date was changed to April 19, 2021.

Thirteen months before the trial was scheduled to begin, a pandemic arrived in the United States. By March 13, 2020, the President had declared a national emergency in response to the coronavirus ("COVID-19"), which the World Health Organization had declared a pandemic. In response, on that date, Chief Judge Robinson found that "[t]o combat the spread of disease and effectively follow the guidance of the Centers for Disease Control and Prevention, and given the

severity of the risk posed to the public, litigants, counsel, Court staff and other agencies," all non-emergency hearings and trials were postponed indefinitely, pending further order of the Court.  Administrative Order No. 2020-3 (March 13, 2020).  On November 17, 2020, she further found that "the steadily rising number of COVID-19 cases [was] adversely affecting those who come into contact with the Court," and suspended all jury trials until January 4, 2021.  Amended Administrative Order 2020-12 (November 17, 2020).  Again on December 8, 2020, because in-person proceedings could not be conducted in person "without seriously jeopardizing public health and safety," the Chief Judge continued all in-person civil hearings, bench trials and jury trials that were set to commence through February 15, 2021.  Administrative Order 2020-13 (December 8, 2020).  In response to this order, anticipating that pandemic concerns might not be resolved by April, this Court on December 17, 2020, ordered the parties to show cause by December 23, 2020 why it should not conduct a remote civil jury trial in this case under protocols which the United States District Court had successfully pioneered in the Western District of Washington.

Unsurprisingly, the Court's predictions with regard to the pandemic appear to be proving correct.  As recently as February 2, 2021, Chief Judge Robinson again recognized the need to "assist in the preservation of public safety and health while effectively administering justice during the COVID-19 pandemic" and noted that a "continued significant rate of COVID-19 infections in many parts of the District" made it advisable to continue to restrict certain court operations.  Accordingly, she continued all in-person civil trials scheduled to commence through March 31, 2021.  Administrative Order 2021-02 (February 2, 2021).

In response to the Court's order to show cause, plaintiff consented to a remote jury trial and agreed that the Court should appoint a special master to assist with the technological

requirements of a remote proceeding. Defendants objected both to a remote jury trial and appointment of a special master. Having reviewed the parties' arguments, the record of this case and the relevant legal authority, the Court orders that the parties proceed to a jury trial by videoconference on April 19, 2021. The reasoning for the Court's decision is as follows.

## Discussion

This Court's authority to convene a jury trial by contemporaneous video conferencing technology derives from Federal Rules of Civil Procedure 77(b) and 43(a). Gould Electronics Inc. v. Livingston County Road Commission, 470 F. Supp. 3d 735, 738 (E.D. Mich. 2020). Rule 77(b) provides that "[e]very trial on the merits must be conducted in open court and, *so far as convenient*, in a regular courtroom." (emphasis added). Thus, while Rule 77(b) contemplates that trials will occur in a "courtroom," the Rule is flexible and allows a trial to be conducted in a non-traditional manner when "exigencies make traditional procedures impracticable." Gould, F. Supp. 3d at 738. Rule 43(a), in turn, provides that "witnesses' testimony must be taken in open court," except that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Therefore, like Rule 77(b), Rule 43(a) affords flexibility when circumstances require it.

Whether good cause and compelling circumstances exist as contemplated by Rules 77(b) and 43(a) is a matter for the court's discretion. Thomas v. Anderson, 912 F.3d 971, 977 (7th Cir. 2018) ("[U]nder Rule 43(a), the judge has discretion to allow live testimony by video for 'good cause in compelling circumstances and with appropriate safeguards.'"), cert. denied, 140 S. Ct. 533 (2019); see also Gould, F. Supp. 3d at 740 ("Determining whether good cause and compelling circumstances exist is a matter left to the court's discretion."). The Advisory

Committee Notes to Rule 43(a) provide clarification as to when a court should exercise this discretion, stating that "good cause in compelling circumstances" does not exist merely because "it is inconvenient for the witness to attend trial." Fed. R. Civ. P. 43(a) 1996 Amend. Rather, the Notes advise, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Id.

The Court finds that with appropriate safeguards, good cause and compelling circumstances justify the use of contemporaneous video conferencing technology in this case. The World Health Organization has declared COVID-19 a "public health emergency of international concern" and the United States Health and Human Services Secretary has declared the virus a "public health emergency."[1] COVID-19 is currently rampaging across Kansas, and while we are seeing hopeful indicators, the daily rate of new cases is 130 times what it was on March 24, 2020, when the Court first suspended non-emergency trials (20 new cases on March 24, 2020 versus 2,603 new cases on February 5, 2021). As of February 5, 2021, only 7.1 per cent of Kansans had received even one coronavirus vaccine. And, as stated above, this District Court is currently closed to in-person civil jury trials. The undersigned judge expects that on the date when this trial is scheduled to commence, in-person civil jury trials will still be prohibited or—at best—parked behind a long line of criminal jury trials which will necessarily have greater claim to available courtroom access. While the United States now appears to have effective vaccines against the virus that causes COVID-19, predicted distribution rates suggest that the vaccine will not be available to the general population in Kansas in the foreseeable future.

Next the Court considers the availability of "appropriate safeguards" contemplated by

---

[1] See COVID Data Tracker, CDC, https://www.cdc.gov/coronavirus/2019-ncov/summary.html (last visited February 6, 2021).

Rule 43(a). Rule 43(a)'s requirement that testimony occur in open court serves two purposes: (1) to ensure that the witness testimony may be tested by cross-examination, and (2) to allow the trier of fact to observe the demeanor of the witness. In re Adair, 965 F.2d 777, 780 (9th Cir. 1992) (citing Carter-Wallace, Inc. v. Otte, 474 F.2d 529, 536 (2d Cir. 1972)). Both purposes are satisfied with contemporaneous videoconferencing technology. First, the parties in this case of course will be allowed to cross-examine witnesses. And second, modern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and "live" testimony, thereby allowing a juror to judge credibility unimpeded. See In re RFC & ResCap Liquidating Trust Action, 444 F. Supp. 3d 967, 971 (D. Minn. 2020) ("Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony." (internal marks omitted)); Aoki v. Gilbert, No. 2:11-cv-02797, 2019 WL 1243719, at *1 (E.D. Cal. Mar. 18, 2019) (finding that appropriate safeguards existed to allow witnesses to appear by videoconference because the witnesses "will testify under oath, and will be subject to cross-examination"); Warner v. Cate, No. 1:12-cv-1146-LJO-MJS, 2015 WL 465019, at *1 (E.D. Cal. Aug. 4, 2015) ("Because a witness testifying by video is observed directly with little, if any delay in transmission . . . courts have found that video testimony can sufficiently enable cross-examination and credibility determinations, as well as preserve the overall integrity of the proceedings."); In re Vioxx Prods. Litig., 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (contemporaneous transmission of video testimony through current technology permits "the jury to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration, and, thus satisfies the goals of live, in-

person testimony" (internal citation and marks omitted)); F.T.C. v. Swedish Match North America, Inc., 197 F.R.D. 1, *2 (D.D.C. Aug. 28, 2000) (noting that "there is no practical difference between live testimony and contemporaneous video transmission"); Gould, 470 F. Supp. 3d at 738 (same).

All of defendants' objections spring from a false premise that stakeholders have a choice to do a traditional in-person trial (business as usual), unconstrained by pandemic conditions. At this point in epidemiological history, the Court should not have to explain the obvious: that "normal" in-person trials are not possible in the District of Kansas, especially commencing as early as April 20, 2021. Many of defendants' objections are therefore substantially misplaced. Nonetheless the Court addresses them each in turn, as follows:

Defendants' first objection is that Federal Rule of Civil Procedure 43 contemplates "the parties' right to present their cases in open court" and that while good cause for remote testimony may exist in other cases, good cause does not exist in the "unique circumstances" of this case ("a lengthy trial and complex evidence"). This objection is easily rejected. Defendants tacitly recognize that the decision whether to allow remote testimony is a discretionary one for the Court. This case is admittedly important. But it is not particularly long (two weeks or less) or complicated (most of defendants' evidence will consist of video depositions from experts, and defense counsel have already tried 20 such cases on remand from the MDL). The case involves one plaintiff and for all practical purposes, one defendant. This case easily falls within the heartland of cases that are amenable to remote trial proceedings.

Defendants' second objection is that because plaintiff's injuries are gynecological and the evidence is complex, medical and scientific, this trial is particularly inappropriate for a virtual setting. Specifically, defendants insist that they need to use "three-dimensional demonstratives

to explain a complex medical implant and develop the rapport necessary to discuss injuries of an exceptionally intimate nature." Defendants do not explain why, as a practical matter, their 3-D demonstratives do not effectively translate to remote video technology. In fact, having had the benefit of just one masterful defense PowerPoint, the Court is strongly convinced that the opposite must be true. If jurors are in the courtroom with parties and counsel, they will be masked (maybe double-masked), wearing face shields, socially distanced by six to 12 feet and separated by plexiglass from counsel and other jurors. They will be separated from experts and their 3-D models by two layers of plexiglass and even more social distancing. The goal of trial is not to re-create "the relationship a doctor would have with a patient when exploring complex medical topics with a layperson," but to present evidence which will help the jury arrive at a just verdict, so that alleged loss of that dynamic is not one which the Court is inclined to remediate. The Court predicts that because this case does involve "sensitive" and "intimate" topics, all parties—plaintiff, defendants and jurors alike—will be more comfortable, forthcoming and candid outside a massive, sterile, imposing federal courtroom. Indeed, judges who have conducted remote criminal proceedings note that allocution is typically more productive, informative and helpful because the very nature of Zoom technology is more intimate (their words, not mine) than a typical courtroom experience. In short, the sensitive subject matter of this litigation does not make it unsuitable for remote trial proceedings.

Defendants' third objection is that a virtual trial is not a reasonable substitute for a traditional in-court trial due to the risk of juror distraction, which will be exacerbated by the length of trial and the presentation of complex scientific evidence. This concern, however, can also be mediated. With the assistance of its Special Master in another case, the District has adopted robust procedures to monitor jurors to ensure that they are following the proceedings.

These procedures include constant monitoring to ensure that no one is distracted. In addition, the trial days will be shortened (and include several breaks) to further reduce the possibility of distraction and/or "Zoom fatigue" among jurors. And in the end, of course, just as in an in-person trial format, counsel are responsible for presenting their evidence in a way that compels the attention of the jury. The Court cannot force the jury to remain mentally focused. As part of the jury selection process, however, it can (and will) inquire about people working at home, children attending school remotely, and whether jurors have access to a private space where, for specific hours of trial, they can focus on the evidence.

Defendants' fourth objection is that logistical difficulties will interfere with the efficiency and equity of a virtual trial. Based on conversations with the Court's IT staff, the Western District of Washington, and the Special Master in <u>Morgan v. Wesley Medical Center</u>, Case No. 18-2158, the Court believes that this concern is exaggerated and that trial can effectively proceed in the remote format which the Court has approved in that case. <u>See</u> <u>Order For Remote Civil Jury Trial</u> (Doc. #610) filed February 4, 2021 in <u>Morgan v. Wesley Medical Center</u>, Case No. 18-2158. Moreover, the Court has no concern that a remote trial format will prevent the jury from assessing non-verbal cues such as "normal eye contact." As an aside, behavioral scientists are far from agreement whether such non-verbal cues are probative on the issue of credibility. More importantly, however, video technology will not inhibit the jury's ability to see non-verbal cues or judge the credibility of witnesses. Based on this Court's experience with Zoom technology, in fact, the opposite is true. As noted, if this case were tried in person, jurors and witnesses would be masked and wearing face shields, physically separated by plexiglass barriers and socially distanced by six to 12 feet. The Court agrees that non-verbal communication is an integral part of any trial, but it is not persuaded that such communication will be obscured by

videoconferencing.  Given the clarity and speed of modern videoconference technology, in fact, "livestreamed" testimony is likely to be an improvement on "live" testimony.  The jurors will be able to assess the creditability of witnesses accordingly.  Moreover, each juror will be continually visible on the attorneys' monitors, thereby allowing the attorneys to gauge the jurors' reactions to the proceedings without logistical difficulties that will detract from the trial in any meaningful way.

Defendants' fifth objection is that not all potential jurors have access to (or will be proficient with) technology that makes a remote trial possible, so a virtual trial would necessarily limit the jury pool to those prospective jurors with high-speed internet access, a modern computer and video camera, and a private space for participating in a remote trial.  The Court initially had concerns about this issue, but based on experience in the Morgan case, it has come to believe that a remote proceeding will actually expand the number and categories of jurors who are willing and able to serve.  Based on information provided to date by prospective jurors in that case, it is clear that very few of them lack access to reliable technology and technological know-how.  Moreover, defendants' concern is easily assuaged by the fact that the Court is prepared to provide technical assistance and training and has arranged to loan equipment to jurors if necessary.  This equipment may include laptops, iPads, wireless routers for Wi-Fi hotspots, speakers and monitors.

In passing, defendants suggest that regardless what the Court decides about the format of trial, their national and local counsel, and possibly witnesses, will travel to a single location or network in person in multiple locations.  Obviously the Court cannot prevent those gatherings, but the prospect that the defense team would intentionally engage in unnecessary travel suggests

a mindset that gives further cause for concern about whether the Court can safely include them in in-person proceedings in this case.

To date, this District has successfully conducted many criminal and civil proceedings by videoconference, and the Western District of Washington has reported that the foregoing procedures have proven effective—as evidenced by the attentiveness of jurors during remote trials, as well as positive feedback from jurors, attorneys and parties who participated in the remote proceedings.

In conclusion, the Court finds that a case of this age, complexity, length and importance is not unsuitable for remote trial proceedings. The surgery which engendered this lawsuit occurred in 2007—14 years ago. All parties have vested interests in moving forward, and the case has been ready for trial since June of 2020. The Court will not make the parties wait another unknown number of months (possibly years) until it is safe to resume in-person jury trials and the District's pandemic backlog (an ever-growing backlog) of criminal jury trials has been cleared—particularly when it is possible to conduct a remote jury trial in a manner that ameliorates each of defendants' objections and satisfies Rules 77(b) and 43(a).

## Conclusion

For the foregoing reasons, the Court **HEREBY ORDERS** that this matter proceed with a remote jury trial by videoconference on April 19, 2021. Preparation for this trial format will require a substantial amount of work for Court staff as well as parties and attorneys. Thus, even if the pandemic environment seems to be improving, on the surface, the Court cannot wait until the last minute or even defer the question whether an in-person trial can safely occur on April 19, 2021.

**IT IS SO ORDERED.**

Dated this 8th day of February, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

-11-