```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF INDIANA
 2                          HAMMOND DIVISION

 3   BARBARA KAISER, ET AL.,      )
                                  )
 4        Plaintiffs,             )
                                  )
 5   vs.                          ) 2:17-CV-114
                                  )
 6   ETHICON, INC. and JOHNSON &  )
     JOHNSON,                     )
 7                                )
          Defendants.             )
 8
                        TRANSCRIPT OF MOTION HEARING
 9                          November 28, 2017
                   BEFORE THE HONORABLE PHILIP P. SIMON
10                     UNITED STATES DISTRICT JUDGE

11   A P P E A R A N C E S:

12   FOR THE PLAINTIFFS:

13                      THOMAS O. PLOUFF
                        Costello, McMahon, Burke & Murphy
14                      150 N. Wacker Drive, Suite 3050
                        Chicago, Illinois  60606
15                      (312) 541-9700

16                      JEFFREY M. KUNTZ, PHV
                        Wagstaff & Cartmell, LLP
17                      4740 Grand Avenue, Suite 300
                        Kansas City, MO  64112
18                      (816) 701-1100

19                      TIMOTHY E. JACKSON, PHV
                        Wexler Wallace, LLP
20                      55 West Monroe, Suite 3300
                        Chicago, Illinois  60603
21                      (312) 346-2222

22   FOR THE DEFENDANTS:

23                      JENNIFER L. STEINMETZ, PHV
                        Tucker Ellis, LLP
24                      950 Main Avenue, Suite 1100
                        Cleveland, Ohio 44113
25                      (216) 592-5000
```

Stacy L. Drohosky, FCRR, CRR, RPR
(219) 852-3462 - stacy_drohosky@innd.uscourts.gov

```
 1  each one individually.
 2         The idea that they're hearsay, also, I think is without
 3  merit because they go to knowledge; and I think an expert can
 4  rely on those two, as you suggested, to support the --
 5         THE COURT:  Well, certainly under Rule 703 an expert
 6  can rely upon materials that aren't admissible; but counsel's
 7  point is it is incumbent upon you to, at least, proffer to them
 8  what are the studies that your experts are relying upon so that
 9  they can meaningfully cross-examine them.
10         MS. STEINMETZ:  Well, those would be identified,
11  first of all, in the exhibit list; but I think the question --
12  what they were trying to exclude is this notion that we would
13  say, you know, there are 100 or 200 randomized controlled
14  trials that support the safety and efficacy of Prolift just as,
15  sort of, a blanket statement.  And, I mean, they will do that
16  because that's our primary defense.  That's our rebuttal to the
17  claims that the product is defective and that there's no
18  warnings, et cetera.
19         THE COURT:  I understand.  Again, just so that
20  there's no surprise here as to what those studies are.
21         MS. STEINMETZ:  And there won't be.
22         THE COURT:  And so I'm going to conditionally -- what
23  I'm going to do is defer ruling on this pending you -- and I
24  presume this is no surprise, but to the extent it is -- you
25  providing to counsel by no later than the time of the final
```

1    pretrial conference all of the studies that your experts are
2    going to rely upon when they presumably will be opining that
3    the Prolift product is safe.
4         Does that satisfy what you are interested in?
5         MR. PLOUFF:  Only -- well, when I hear about there
6    being hundreds of randomized controlled trials that support the
7    safety and efficacy of Prolift, I'm very concerned.  If they
8    tell me, Here are the hundred that we're talking about, that's
9    fine; but there may be -- there's studies and then there's
10   randomized clinical trials.  I want to know -- if they're
11   saying -- and randomized clinical trials are a high degree of
12   proof, so I want to know which of these studies are they saying
13   are randomized clinical trials, and then we can cross-examine
14   their people on them.  But we want that distinction to be made.
15        MS. STEINMETZ:  That's even better.
16        THE COURT:  Okay.  So you are ordered to do that by
17   the time of the final pretrial conference, okay?
18        Okay.  So Motion No. 2 is a motion that deals with, you
19   know, essentially throwing around statements that this is, kind
20   of, attorney-driven litigation.
21        Do you want to be heard on that?
22        MR. PLOUFF:  The only thing that I'm entirely
23   confused about is how they say, well, if we open the door to
24   it, or how it can be used for impeachment.  There's no
25   conceivable way that I know of that you could open the door to

```
 1   this.  That's not helpful.  You need very specific foundation
 2   as to what an expert can testify to and what he can cover, and
 3   that's going to be incumbent upon you to lay that foundation
 4   such that they can make those more blanket statements.  It is
 5   just a matter of the foundation.
 6              MS. LARIMORE:  Right.
 7              THE COURT:  Do you want to say anything else about
 8   this?
 9              MR. PLOUFF:  I just -- number one, if they are
10   that -- this well-known risk, why isn't it in the IFU; but,
11   number two is, how do they possibly prove what all surgeons
12   knew about the risk of this thing.  There's no survey what
13   surgeons knew.  The point of an IFU is to tell them these
14   things.
15        I can agree with Your Honor that it can go to foundation.
16   It is just that the reason why we think the motion is ripe is
17   simply because I don't see how you could possibly lay a
18   foundation and say that all surgeons knew about the risk of the
19   Prolift.
20              THE COURT:  But if there's evidence along the lines
21   of what I've just said, that these are things that are talked
22   about regularly at seminars and doctors' meetings and in
23   residency programs, if there's that kind of foundation, then
24   we'll have to see; but the proof is in the pudding here.
25        So I'm going to defer my ruling on this subject to being
```

1  training and, you know, surgeon training at Ethicon in
2  Cincinnati. He talked about that in his deposition, knew the
3  physicians that were involved, et cetera. So that professional
4  education training, I think, can be discussed in the opening.
5       THE COURT: That's plainly relevant. Yes. I mean,
6  of course. That's the sum and substance of this case as I see
7  it.
8       This other stuff is a little bit -- I kind of agree with
9  the plaintiff in this sense. It is kind of noise. What really
10 matters is the surgeon at issue here who was warned or not
11 warned adequately enough.
12      And so, again, I'll state it again, it is all subject to a
13 foundation being laid such that an expert will be able to
14 testify that these are the kinds of things that doctors learn
15 in education programs that perhaps we sponsor at Ethicon where
16 hundreds of doctors come where we teach them about this
17 product. That's starting to get to a foundation that would
18 then allow you to make those kind of more blanket statements,
19 but it just depends upon what the evidence is.
20      Am I making myself clear, Ms. Larimore?
21      MS. LARIMORE: Yes.
22      THE COURT: That's Motion in Limine No. 5.
23 Okay. Motion in Limine No. 6, do you want to be heard on
24 this at all?
25      MR. PLOUFF: Again, it's not -- if there are specific

1  studies where they want to say that the complication rate is
2  low, fair game. Let us know about it. But just to say, like
3  they did in their IFU, that its rare complications is not a
4  foundation for an expert -- in order to have the expert testify
5  to something being rare, let's see what study he's talking
6  about so we can cross the study. It kind of relates to the
7  issue we had earlier.
8          THE COURT: Ms. Steinmetz, are you speaking to this?
9          MS. STEINMETZ: Yes, Your Honor.
10     So you ruled already on the Motion in Limine No. 1, so you
11 ordered us to tell him what randomized controlled trials that
12 we're going to be using with our experts; and so I think that,
13 as we said in the briefing, the word "rare" is a subjective
14 term. And it is something -- it is an expert interpretation,
15 and I think an expert is allowed to give that interpretation.
16         THE COURT: My ruling from Motion in Limine No. 1
17 will stand as it relates to Motion in Limine No. 6.
18     You know, it is not helpful, and I wouldn't allow an
19 expert to just get up and say, oh, ladies and gentlemen of the
20 jury, this is rare. Okay. Next subject.
21     There's got to be a foundation for it. Here is the
22 studies that we've looked at. Here's the complication rate.
23 It is 1 in 50, and in my view, that's rare. That would be
24 fair. If it is one in two and he said it was rare, then, of
25 course, it wouldn't be fair. So it just depends.

```
 1            MR. KUNTZ:  That is not true.  It was developed --
 2   the sling was developed before.  It is a different mesh.  The
 3   mesh used in the Prolift kit --
 4            THE COURT:  But it is all the polypropylene, correct?
 5            MR. KUNTZ:  The raw material is the same, but this is
 6   Prolene Soft mesh that has different characteristics, the load,
 7   because the true POP -- if you look at a sling versus the POP
 8   kit, big difference.  And if you look in our motion, we cite
 9   testimony from Axel Arnaud, who's one of the inventors of the
10   Prolift, who said, These are very different.  You can't compare
11   it.  They wrote to the FDA and said, FDA, these are apples and
12   oranges.  You can't compare --
13            THE COURT:  I guess we're talking past one another.
14   I'm not disagreeing with you.  I don't think that's what they
15   are saying.
16       But let me hear what you intend to do as it relates to --
17       Did you want to say something else?
18            MR. KUNTZ:  Just real quick.  I don't want to hear in
19   opening how the TVT is the gold standard and that it is the
20   best thing ever and every doctor group uses it.  If it is, we
21   worked on TVT and that led to the Prolift, fine; but
22   bootstrapping the greatness of the TVT into the Prolift is what
23   I'm worried about.
24            THE COURT:  I totally understand your argument.
25            MS. STEINMETZ:  We don't intend, Your Honor, to get
```

1  up and talk about TVT being the gold standard by any means.  It
2  is not a TVT trial.  It is not a case about TVT, but the TVT
3  and its development and the creation of it does play into the
4  history of Prolift.  And Axel Arnaud also, you know, says that
5  in his deposition testimony, and so to completely blanket
6  exclude TVT or TVT-O or any of the above would be prejudicial.
7        **THE COURT:**  I'm going to conditionally deny the
8  motion in limine.  I do think they are going to be allowed in a
9  limited way in telling their side of the story, to telling
10 their side of the development of the POP device, that there
11 were other devices that used similar raw materials that in that
12 development led to the device that's in question here; but to
13 then try to extrapolate, that's where I'm going to stop it.
14 But I'm going to make it incumbent upon you all to interpose an
15 objection when you think it is going beyond -- what I'm hoping
16 I'm making clear here is -- why it is admissible, simply for
17 background and historical information for the jury that led to
18 the development of the product at issue.
19     So does everybody understand where I'm coming from on
20 that?
21     Ms. Steinmetz?
22       **MS. STEINMETZ:**  Yes, Your Honor.
23       **MR. KUNTZ:**  Yes.
24       **THE COURT:**  So the motion will be conditionally
25 denied with those caveats.