# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CAROLYN M. KIEFFABER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 20-1177-KHV |
| | ) | |
| ETHICON, INC. and | ) | |
| JOHNSON & JOHNSON, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion To Exclude Evidence About Mesh Characteristics Because Of Failure To Preserve Mesh Explants (Doc. #188) filed February 12, 2021. Defendants argue that by repeated disposal of explanted mesh, plaintiff has violated her obligation to preserve evidence and irreparably impaired their ability to respond to plaintiff's claims about the physical characteristics of her mesh device. Accordingly, pursuant to the Court's inherent authority and Rule 37, Fed. R. Civ. P., defendants ask the Court to bar plaintiff's experts from introducing evidence that mesh material implanted in plaintiff was defective because it caused chronic foreign body reaction, degradation, chronic inflammation, deformation, loss of pore size, fibrotic bridging with scar plate formation, shrinkage, contraction or similar conditions. Plaintiff responds that plaintiff and her attorneys never possessed or discarded any explanted mesh; that some of her explanted mesh still exists; and that the proposed sanction should require proof of bad faith and prejudice, which Ethicon cannot show.

**I.      Factual Background**

Plaintiff had Prolift implantation surgery in 2007. She later experienced complications and hired attorneys in late 2011 or early 2012. She had her first revision surgery on January 31, 2012 and filed suit seven months later, on August 26, 2012. After the surgery, on February 28, 2012, plaintiff called her surgeon to report that "her attorney wanted her to see if the mesh that was removed during surgry [sic] is being stored anywhere." The surgeon responded that "this was disposed of after surgery." In other words, no mesh materials were preserved for purposes of litigation.

After plaintiff filed suit, on September 18, 2012, she had a second revision surgery. This time, plaintiff's surgeon sent the extracted specimen to pathology. It remains intact and available.

Shortly after plaintiff's second surgery, on December 4, 2012, plaintiff's case was transferred to the MDL. While the case was pending in the MDL, on April 14, 2014, plaintiff had a third revision surgery. As with the first revision surgery, no materials were submitted to pathology or preserved for litigation purposes.

Two months later, on June 17, 2014, the MDL Court entered PTO 121, which ordered that plaintiffs in the MDL take "reasonable steps" to preserve explanted mesh material, notify counsel of any planned or completed surgery involving the removal of mesh material, notify health care providers of the duty to preserve explanted mesh material, and take any necessary steps to facilitate preservation of explanted mesh at the site of removal until arrangements could be made to deliver it to a third-party repository.

The following year, on August 12, 2015, the MDL Court entered PTO 190, which provided a more detailed protocol regarding preservation and inspection of surgically explanted mesh.

A few months after the MDL Court entered PTO 190, on November 2, 2015, plaintiff had

a fourth revision surgery. This surgery yielded the largest sample of explanted mesh, but no samples were preserved. Plaintiff had notified her attorney about the upcoming surgery, but nobody notified her health care providers that they should preserve explant samples for purposes of litigation. At the time, counsel did not know that the MDL Court had entered preservation orders in 2014 and 2015. She first learned about the MDL Court's pathology protocol in April of 2017—two and three years after the fact. Upon learning of the protocols, on April 23, 2017, counsel wrote to the Cleveland Clinic, where plaintiff had had her fourth revision surgery more than 15 months earlier. The Cleveland Clinic had discarded plaintiff's mesh, and it is now unavailable.

In 2017, defendants served on plaintiff a document production request for explanted mesh and other pathology from explanted mesh. Plaintiff responded, "There is no specimen available."[1] Plaintiff did not timely supplement her response to the document production request under Rule 26(e)(1)(A), Fed. R. Civ. P., before the close of discovery. In fact, as of this date, it is not clear whether or when plaintiff formally supplemented her response to defendants' request for production.

At a <u>Daubert</u> hearing in January of 2021, plaintiff's counsel learned that defendants might raise issues of spoliation in this case. In response to this information, on January 26, 2021, plaintiff's counsel contacted Steelgate (the third-party repository for mesh explants in MDL cases) to find out whether pathology from any of the first three procedures had been preserved there.

## II.   Federal Rules Of Civil Procedure

Under Rule 26(a)(1)(A)(ii), Fed. R. Civ. P., except as exempted by Rule 26(a)(1)(B), Fed. R. Civ. P., or as otherwise stipulated or ordered by the court, a party must, without awaiting a

---

[1] The exact dates of the request and plaintiff's response are not clear; defendants' brief cites "Ex. 1," but Ex. 1 is an 84-page report by Dr. Ralph Zipper.

discovery request, provide to the other parties a copy—or a description by category and location—of all tangible things that the disclosing party has in her "possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Tangible things include mesh explants and/or descriptions of them by category and location. Under Rule 26(a)(1)(C), these initial disclosures were required at or within 14 days after the parties' Rule 26(f), Fed. R. Civ. P., conference unless a different time was set by stipulation or court order. Plaintiff did not disclose the mesh or information about the mesh under this Rule.

Under Rule 26(e)(1)(A), Fed. R. Civ. P., a party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct her disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Prior to January of 2021, when she learned that defendants might raise issues of spoliation in this case, plaintiff did not provide supplemental disclosures with regard to the mesh explants or provide a supplement response to defendants' request for production.

Rule 37(c), Fed. R. Civ. P., deals with failures to disclose or supplement discovery responses. Section (c)(1) specifically provides as follows: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Here, plaintiff's failure to make initial disclosures under Rule 26 was substantially justified. Through the Plaintiff Fact Sheet, document production and deposition testimony in the

MDL, and in the pretrial order here, plaintiff substantially complied with certain Rule 26 duties to disclose and to supplement. The MDL Court did not require further disclosures under Rule 26(a)(1) or (e), and it did not conduct Rule 16 or Rule 26(f) conferences which would have triggered any duties to disclose. In fact, it is fair to say that the MDL Court tacitly excused Rule 26 disclosures altogether. Defendants obviously understood as much, since they never sought to compel disclosures under Rule 26.

Rule 37(b)(2), Fed. R. Civ. P., provides that if a party fails to obey a court order to provide or permit discovery, including an order under Rule 26(f), Rule 35 or Rule 37(a), the court where the action is pending may issue further just orders. With regard to her fourth revision surgery, plaintiff violated two such court orders with respect to preservation of evidence. Plaintiff argues that her dereliction of duty was nothing more than an "innocent mistake" by her attorney, in that for two or three years after the MDL Court entered preservation orders, plaintiff's counsel did not know about them. Inattention, ignorance or incompetence of counsel is not a substantial justification, however, for breach of plaintiff's duty to preserve evidence.

Likewise, plaintiff has not shown a substantial justification for her failure to supplement her response to defendants' document production request. The response—"There is no specimen available"—was untrue when made and until less than three months before trial, plaintiff did not correct her misrepresentation by revealing that a sample from the second revision surgery had been preserved. Plaintiff has not shown a substantial justification for the original answer, her failure to correct her original response or for her failure to follow MDL Court protocols with respect to preservation of evidence. These violations are clearly not harmless, as expert discovery has now closed and defendants have been effectively denied the opportunity to have their own experts evaluate plaintiff's mesh implant for forensic purposes. Consequences are appropriate, regardless

of whether plaintiff or her counsel is responsible for the default, whether counsel acted negligently or with malevolent intent, or whether plaintiff and her attorney ever had personal possession of the mesh explants in question.

## III.     Inherent Power Of The Court

Plaintiff had a common law duty to preserve evidence which she knew, or reasonably should have known, is relevant to imminent litigation, calculated to lead to the discovery of admissible evidence, and reasonably likely to be requested during discovery or the subject of a pending discovery request.  This duty exists independently of any evidence preservation order in a particular case, but here, as noted, the MDL Court codified those obligations in orders dated June 17, 2014 and August 12, 2015.

### A.     Surgery On January 31, 2012

According to her complaint, plaintiff learned that Prolift mesh was defective by seeing various attorney ads on television in late 2011.  In late 2011 or early 2012, shortly before her first revision surgery on January 31, 2012, plaintiff had retained attorneys.  Defendants argue that by that time, she knew or should have known that any explanted mesh would be critical evidence regarding her claims, and that she had a duty to preserve explanted mesh from the first surgery. The record contains no evidence that plaintiff made any timely efforts—let alone reasonable efforts—to preserve that evidence.  Plaintiff does not dispute that by the time of her first surgery, she knew that litigation was imminent, and that any mesh explant would be admissible in evidence and subject to discovery.  Her only response is that she "had no duty to preserve her explant sample from any of the first three surgeries, as no preservation order had been entered."  This argument lacks legal merit.  Plaintiff had a legal duty to preserve evidence, with or without the MDL orders, and she violated it.

### B. Surgery On September 18, 2012

Plaintiff's second revision surgery occurred on September 18, 2012, after plaintiff had filed suit. For reasons not disclosed on the record, plaintiff's surgeon sent the extracted specimen to pathology. The specimen remains intact and is available for inspection and testing. In 2017, however, in response to a document production request, plaintiff denied that this specimen existed. She never corrected this misinformation, or disclosed the existence of this sample, until three months before trial—well after the close of discovery. As a result, plaintiff denied defendants meaningful access to the sample for purposes of discovery. In this instance, plaintiff satisfied her duty to preserve evidence (or perhaps just got lucky) but violated her duty to disclose it. For all practical litigation purposes, her conduct was tantamount to destroying the evidence in question.

### C. Surgery On April 14, 2014.

While her case was pending in the MDL, on April 14, 2014, plaintiff had a third revision surgery. Again, no materials were submitted to pathology or preserved for litigation purposes. The record contains no suggestion that plaintiff or her lawyers made any request whatsoever to procure or preserve any part of the mesh implant, and none is available. Again, on this record, it is clear that plaintiff violated her duty to preserve evidence.

### D. Surgery On November 2, 2015

On November 2, 2015, after the MDL Court had entered two very specific orders with regard to preservation of mesh extract samples, plaintiff had a fourth revision surgery. Before that surgery, plaintiff notified her attorney, Elizabeth Dudley, of the upcoming revision. Neither plaintiff nor her attorney took any steps—let alone reasonable steps—to notify the surgeon of any duty to preserve explanted mesh material for later delivery to Steelgate, the MDL's third-party repository. More than a year after the surgery (perhaps in response to defendants' request for

production?), plaintiff's counsel contacted the Cleveland Clinic, where plaintiff's surgery had occurred, and learned that no explant material had been preserved. Here again, plaintiff violated her duty to preserve evidence, this time in violation of common law and two specific MDL Court orders. Of the four surgeries, this most recent one involved the largest mesh extract.

In summary, with regard to each of her four surgeries, plaintiff violated duties to preserve and disclose the existence of mesh which had been surgically extracted. Plaintiff cannot seriously argue that her conduct was harmless or that defendants did not sustain prejudice on account of her violations. It is too late in the litigation process to tender the one extant sample, to say that defendants are free to inspect it, or that all samples are the same so it doesn't matter whether plaintiff preserved one or four of them. It is also irrelevant that Ethicon destroyed documentary evidence, that Ethicon's spoliation was worse, that plaintiff herself "did nothing wrong," that plaintiff "did all that could reasonably be expected" by informing counsel of her fourth revision surgery, that defendants have not called pathology experts in 16 of 17 other mesh explant cases, that Ethicon should file an affidavit which establishes that the missing evidence is "crucial," that defendants could have been more persistent and timely in seeking the mesh extracts, or that plaintiff will not object if defendants want to get the sample from Steelgate and examine it. All of these arguments are background noise, seemingly crafted to distract attention from the real issues.

**IV.     Remedy**

Sanctions for discovery misconduct and violation of discovery orders are self-executing under Rule 37 and do not turn on the state of mind of plaintiff or her counsel. In deciding whether to sanction plaintiff for violation of her common law duty to preserve evidence, however, the Court also inquires into the culpability of the responsible party and the degree of resulting prejudice to defendants.

On this record, the Court is not convinced that plaintiff intentionally destroyed or failed to preserve evidence in order to prevent discovery by defendants or otherwise disadvantage their ability to defend this case.  The Court does find that plaintiff was grossly negligent in discharging her duties under the common law.  Prejudice to defendants is obvious.  Accordingly, the Court must decide what specific consequences are appropriate.

Defendants ask the Court enter an order "barring plaintiffs' experts from introducing any evidence that mesh material implanted in Ms. Kieffaber was defective because it caused chronic foreign body reaction, degradation, chronic inflammation, deformation, loss of pore size, fibrotic bridging with scar plate formation, shrinkage, contraction, or similar condition."  Plaintiff objects that such an order would be "at least as harsh as an adverse inference instruction," and is unjust because plaintiff did not personally destroy or discard evidence.  Since plaintiff claims that she has done "nothing wrong," she offers no constructive thoughts on what consequences should ensue if the Court finds otherwise.

The Court is in substantial agreement with defendants' proposed remedy, but it is overly broad.  It is not clear how examination of plaintiff's mesh would prove that it caused plaintiff to suffer chronic foreign body reaction, chronic inflammation or fibrotic bridging with scar plate formation.  At most, examination could reveal that plaintiff's mesh has characteristics which cause chronic foreign body reaction, chronic inflammation or fibrotic bridging with scar plate formation, i.e., mesh degradation, deformation, loss of pore size, shrinkage, contraction or similar conditions. Defendants' motion is therefore sustained to the extent that plaintiff's experts cannot opine that plaintiff's specific mesh had any of these characteristics.

For reasons stated in Daubert rulings, plaintiff's experts can testify to opinions that do not depend on physical examination of plaintiff's mesh.  In other words, they can testify about

characteristics of mesh in general, and—if the evidence establishes that the mesh in plaintiff's Prolift was the same mesh used in other patients—opine that (1) Prolift mesh causes chronic foreign body reaction, chronic inflammation and fibrotic bridging with scar plate formation; and (2) in general, mesh undergoes degradation, deformation, loss of pore size, shrinkage, contraction and similar changes.  The jury will decide whether to reasonably infer from that evidence that plaintiff's mesh had the characteristics in question and proximately caused plaintiff's injuries.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Exclude Evidence About Mesh Characteristics Because Of Failure To Preserve Mesh Explants</u> (Doc. #188) filed February 12, 2021, be and hereby is sustained, as set forth above.

Dated this 25th day of March, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge